IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HOWMET CORPORATION; TURBINE COMPONENTS CORPORATION; HOWMET ALUMINUM CASTING, INC.; FIRTH RIXSON, INC.; HUCK INTERNATIONAL, INC.; HOWMET GLOBAL FASTENING SYSTEMS INC.; B&C CASTINGS, INC.; HOWMET MEXICO HOLDINGS LLC; HOWMET AEROSPACE INC.; RTI-CLARO, INC.; RMI TITANIUM COMPANY, LLC; FIRTH RIXSON FORGINGS LLC; FORGED METALS, INC.; HOWMET CASTINGS & SERVICES, INC.; and SCHLOSSER FORGE COMPANY, <br><br>           Plaintiffs, <br><br>     v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA, <br><br>           Defendants. | No. 26-01423 |

# COMPLAINT

1.      Plaintiffs, Howmet Corporation; Turbine Components Corporation; Howmet Aluminum Casting, Inc.; Firth Rixson, Inc.; Huck International, Inc.; Howmet Global Fastening Systems Inc.; B&C Castings, Inc.; Howmet Mexico Holdings LLC; Howmet Aerospace Inc.; RTI-Claro, Inc.; RMI Titanium Company, LLC; Firth Rixson Forgings LLC; Forged Metals, Inc.; Howmet Castings & Services, Inc.; and Schlosser Forge Company ("Plaintiffs") are importers, as defined in 19 C.F.R 101.1, of merchandise into the United States ("U.S.") subject to the challenged duties.

2.      Beginning in February of 2025, through a series of executive orders, the President

invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiffs source their imports and transport imports on behalf of their customers. Plaintiffs are responsible for paying these tariffs on the imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id*. at 5. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources*, Plaintiffs seek for themselves a full refund from Defendants of all IEEPA duties Plaintiffs have paid to the U.S.

**PARTIES**

6. Plaintiff, Howmet Corporation, is a U.S. Company incorporated in Delaware.

7. Plaintiff, Turbine Components Corporation, is a U.S. Company incorporated in Connecticut.

8. Plaintiff, Howmet Aluminum Casting, Inc., is a U.S. Company incorporated in Delaware.

9. Plaintiff, Firth Rixson, Inc., is a U.S. Company incorporated in Delaware.

10. Plaintiff, Huck International, Inc., is a U.S. Company incorporated in Delaware.

11. Plaintiff, Howmet Global Fastening Systems Inc., is a U.S. Company

incorporated in Delaware.

12. Plaintiff, B&C Castings, Inc., is a U.S. Company incorporated in Delaware.

13. Plaintiff, Howmet Mexico Holdings LLC, is a U.S. Company incorporated in Delaware.

14. Plaintiff, Howmet Aerospace Inc., is a U.S. Company incorporated in Delaware.

15. Plaintiff, RTI-Claro, Inc., is a Canadian Company incorporated in Quebec, Canada.

16. Plaintiff, RMI Titanium Company, LLC, is a U.S. Company incorporated in Ohio.

17. Plaintiff, Firth Rixson Forgings LLC, is a U.S. Company incorporated in Delaware.

18. Plaintiff, Forged Metals, Inc., is a U.S. Company incorporated in California.

19. Plaintiff, Howmet Castings & Services, Inc., is a U.S. Company incorporated in Delaware.

20. Plaintiff, Schlosser Forge Company, is a U.S. Company incorporated in California.

21. Defendant U.S. Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the U.S.

22. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

23. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

24. Defendants are referred to collectively in this complaint as "CBP."

## JURISDICTION

25. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Res.*, slip op. at 5, n.1.

26. This Court has the same powers at law, in equity, and as conferred by statute as a U.S. District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the U.S. and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

27. Plaintiffs have standing to bring this lawsuit because they are the importers of goods imported into the U.S. from countries subject to the IEEPA duties as implemented and collected by CBP that have been held by the Supreme Court to be unlawful. As a result of the executive orders identified in this lawsuit, Plaintiffs have paid IEEPA duties to the U.S. and thus have suffered injury caused by those orders. The relief Plaintiffs seek from this Court would redress those injuries.

## GENERAL PLEADINGS

**I.    The President orders a series of tariffs, invoking IEEPA for his authority.**

    **A.    The IEEPA duties**

28. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

29. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

30. The executive order directed at Canada, Executive Order 14193, *Imposing Duties*

*to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

31. Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 1, 2025), imposed an additional 10% *ad valorem* tariff on products from China imported into the U.S. on top of existing duties.

32. Four days later, on February 5, 2025, the President issued another order, Executive Order 14,200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

33. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

34. On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the U.S., effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

35. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec.

Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

36.     The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

37.     Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States ("HTSUS"), requiring that goods subject to the challenged tariffs be entered under new tariff codes.

38.     On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See generally* Complaint, *V.O.S. Selections*, *et al. v. Trump*, *et al.*, 149 F.4th 1312 (Fed. Cir. 2025), Dkt. No. 2. This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

39.     In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

40.     CBP continued to collect duties imposed by the Challenged Tariff Orders (as defined herein) while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo

Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[1]

41.     By this complaint, Plaintiffs seek relief as a result of all duties they have paid to the U.S. arising from the IEEPA executive orders ("Challenged Tariff Orders").

### B.     CBP's implementation of the tariffs

42.     CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

43.     In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: HTSUS. Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the U.S. consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

44.     CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

45.     The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F.

---

[1] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

46. When goods enter the U.S., CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

### C. Liquidation

47. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

48. Typically, when goods enter (*i.e.*, are imported into) the U.S., the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

49. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

50. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

51. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

52. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

53. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of

record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[2] But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

54. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, n.4 (Ct. Int'l Trade May 23, 2025), Dkt. No. 16 at 12.

## II.    The Supreme Court has held the IEEPA duties are not authorized.

55. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

56. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

57. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc.*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

---

[2] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

58. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

59. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res.*, slip op. at 20.[3]

### III. Plaintiffs paid IEEPA duties.

60. As of the date of this complaint, Plaintiffs have paid IEEPA duties imposed by the Challenged Tariff Orders.

61. The goods Plaintiffs import into the U.S. that are subject to IEEPA tariffs entered the U.S. under new HTSUS codes from foreign countries.

62. Plaintiffs have paid IEEPA duties on numerous entries.

## COUNT I
## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

63. Plaintiffs incorporate paragraphs 1-62 above by reference.

64. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this court's ruling and the Federal

---

[3] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

Circuit's affirmance of this court's opinion in *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 *et seq.*, when he imposed tariffs on imported goods.

65. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Res.*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

66. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

67. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc.*, 149 F.4th 1312 (Fed. Cir. 2025), Dkt. No. 6.

68. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

a) order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b) order CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c) order the U.S. to refund to Plaintiffs the duties collected from Plaintiffs on all entries subject to IEEPA duties, with interest as provided by law;

d) award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action; and

e) grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: March 4, 2026

/s/ Alexander H. Schaefer
John Brew
Alexander H. Schaefer
Daniel Cannistra
Daniel W. Wolff
Aaron Marx
Valerie Ellis
Weronika Bukowski

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel. (202) 624-2773
aschaefer@crowell.com

Weronika Bukowski
CROWELL & MORING LLP
375 9th Avenue
New York, NY 10001

*Counsel for Plaintiffs*

-13-

## CERTIFICATE OF SERVICE

*Howmet Corporation et al. v. United States Customs and Border Protection et al.*

**CIT Case No. 26-01423**

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on March 4, 2026, I served a copy of the Summons, Complaint, Form 5, Form 11s, and Form 13 by certified mail, return receipt requested, upon the following:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

                                                          */s/ Alexander H. Schaefer*
                                                           Alexander H. Schaefer